NOT FOR PUBLICATION (Doc. No. 55)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
KEVIN WEBER,                        :
                                    :
           Plaintiff,               :   Civil No. 07-2097 (RBK/KMW)
                                    :
      v.                            :   OPINION
                                    :
CHRISTOPHER RODRIGUEZ,              :
DANNY LATORRE, NELSON               :
GONZALEZ, THOMAS RIORDAN,           :
and the CITY OF                     :
VINELAND,                           :
                                    :
           Defendants.              :
_____ :

**KUGLER**, United States District Judge:

This matter arises out of Plaintiff Kevin Weber's 2006 arrest for domestic violence. Plaintiff brought this § 1983 suit alleging that Defendants Nelson Gonzalez, Danny LaTorre, Thomas D. Riordan, and Christopher Rodriguez violated his Fourth Amendment rights by using excessive force to arrest him. Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendants claim that: (1) because a state jury found Plaintiff guilty of resisting arrest and aggravated assault in connection with his arrest, Heck v. Humphrey, 512 U.S. 477 (1994), precludes Plaintiff's subsequent Fourth Amendment excessive force claim; and (2) Defendants are entitled to qualified immunity. Plaintiff argues that: (1) Heck does not apply to Plaintiff's case because a judgment in his favor in this action would not imply that his

1

prior convictions were invalid; and (2) Defendants are not entitled to qualified immunity.  For the following reasons, Defendants' motion for summary judgment is **DENIED**.

I.   **BACKGROUND**

On January 28, 2006, Defendants responded to a 9-1-1 call regarding a domestic dispute between Plaintiff and Lisa Mansour.  (Defs.' Br. 1; Defs.' Ex. A Trial Tr. 11:4-6, Apr. 4, 2007). When Defendants arrived on the scene, they observed an injury on Ms. Mansour's lip.  (Defs.' Br. 2).  After speaking with Ms. Mansour, Defendants found Plaintiff in a nearby garage.  (Id.).

Plaintiff and Defendants give differing accounts of the events that transpired in the garage.  Plaintiff alleges that when Defendants arrived, they ordered him to get on the ground. Plaintiff claims that although he complied with Defendants' orders, as he was getting on the ground, Officer Gonzalez sprayed him in the face with pepper spray.  (Compl. ¶ 6).  Plaintiff also claims that although he was not fighting with the officers, Officer Riordan grabbed him in a "wrist-lock" and pulled him to the floor, "Officer Gonzalez placed [him] in a choke hold[,]" and "Officer Rodriguez jumped on [his] back."  (Id.).  Eventually, after the scuffle, the police handcuffed him, removed him from the garage, and ordered him to lie on the ground.  (Id.). After Plaintiff complied, Officer Rodriguez yelled at him and hit him approximately six times on the head with a "PR-24" baton.  (Id.).  Officer Gonzalez also punched his face and one side of his body while Officer Riordan punched the other side of his body.  (Id.).  Plaintiff also alleges that Officer LaTorre "assaulted" him.  (Id.).  When an onlooker asked Defendants to stop, they ordered her to go back inside her house.  (Id.).

Defendants deny Plaintiff's allegations.  Defendants claim that Plaintiff did not comply with their orders.  Instead, when they ordered Plaintiff to come out of the garage, he crouched

2

behind a refrigerator with his hands hidden from view. (Def.'s Ex. A. Trial Tr. LaTorre 83:19-84:13). In order to remove Plaintiff from behind the refrigerator, Officer LaTorre sprayed him in the face with pepper spray and, when he still refused to come out from behind the refrigerator, Officer LaTorre grabbed his wrist. (Id. 84:21-85:4). A fight ensued. Defendants claim that Weber "charged Officer Gonzalez, flailing his arms, trying to punch him." (Id. 85:5-6). While Plaintiff fought, Officer LaTorre punched him, Officer Rodriguez hit him with a baton several times on the legs, and the other officers attempted to subdue him. (Id. 86:17 - 89:19; Def.'s Br. Ex. A Trial Tr. Gonzalez 169:13-16, Apr. 4, 2007). After approximately ten minutes, Defendants handcuffed Plaintiff. (Defs.' Ex. A Trial Tr. Gonzalez 171:8-11, Apr. 4, 2007).

In the state criminal trial based on the events that occurred during the arrest, the jury found Plaintiff guilty of resisting arrest and aggravated assault. (Pl.'s Ex. D Trial Tr. 141-44, Apr. 4, 2007).

In May 2007, Plaintiff filed the Complaint pro se. Plaintiff alleged that Defendants' actions violated his "right to be free from cruel and unusual punishment under the 8th amendment[.]" (Compl. ¶ 6). Defendants timely answered. In January 2010, Magistrate Judge Williams appointed pro bono counsel for Plaintiff. Defendants timely moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. The parties submitted their respective briefs, and the motion is ripe for review.

## II.   STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material

fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the court's role is not

4

to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

#### A. Heck v. Humphrey

Defendants argue that Heck bars Plaintiff's Fourth Amendment excessive force claim because a verdict in Plaintiff's favor in this action is incompatible with his criminal convictions. (Defs.' Br. 7-8).[1] Defendants claim that this § 1983 action and the criminal convictions are incompatible because "[t]he jury in [Plaintiff's] criminal case obviously did not believe that Plaintiff, as he asserts in the [C]omplaint, complied with the officers' directions . . . and then was assaulted by all of the officers[.]" (Defs.' Br. 8). Plaintiff argues that Heck does not bar his § 1983 claim. (Pl.'s Br. 14-15). Specifically, Plaintiff asserts that his § 1983 action and his criminal convictions can coexist because the elements of a § 1983 excessive force claim differ from the elements of resisting arrest and aggravated assault under New Jersey law. (Id.). Plaintiff also highlights the fact that the state trial judge never instructed the state jury on the issue of whether Defendants used excessive force to arrested him. (Id.). The Court agrees.

In Heck, the Supreme Court stated that:

> [I]n order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order,

---

[1] When a plaintiff claims that police officers used excessive force "in the course of an arrest," the court should analyze the claim under the Fourth Amendment, which protects plaintiffs from unreasonable seizures. Graham v. Connor, 490 U.S. 386, 395 (1989). Thus, although Plaintiff asserted an Eighth Amendment claim, the Court construes his claim as a Fourth Amendment excessive force claim under § 1983.

5

> declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will <u>not</u> demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

<u>Heck</u>, 512 U.S. at 487 (emphasis in original). When a plaintiff is convicted of a criminal offense in state court, the federal court must determine whether a finding in favor of the plaintiff in federal court necessarily implies the invalidity of his prior conviction in state court by comparing the elements of the state offense with the plaintiff's § 1983 claim, <u>Nelson v. Jashurek</u>, 109 F.3d 142, 145 (3d Cir. 1997), and examining which questions were put before the jury in the criminal action, <u>Lora-Pena v. FBI</u>, 529 F.3d 503, 506 (3d Cir. 2008).

In <u>Lora-Pena</u>, a § 1983 action,[2] the plaintiff was convicted of resisting arrest and assaulting federal officers during a criminal trial in federal court. <u>Lora-Pena</u>, 529 F.3d at 505. During that trial, the arresting officers testified that the plaintiff had scratched, clawed, and punched them and had "us[ed] his two pit bulls to assault two deputy United States Marshals." <u>Id.</u> One arresting officer admitted that he had struck the plaintiff, but only to the extent necessary to subdue him. <u>Id.</u> At the conclusion of the trial, the court did not ask the jury to

---

[2] Although <u>Lora-Pena</u> involved both § 1983 and <u>Bivens</u> claims, see <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Third Circuit analyzed the claims together, <u>Lora-Pena</u>, 529 F.3d at 505 n.2.

6

decide whether the officers had used excessive force when they arrested the plaintiff. Id. at 506. In a subsequent § 1983 action, the plaintiff alleged that the officers used excessive force during the arrest because they "repeatedly punched and kicked him after he fell to the floor." Id. at 505. The Third Circuit found that because "the question of whether the officers used excessive force was not put before the jury[,] . . . [the plaintiff's] convictions for resisting arrest and assaulting officers would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force in response to his own unlawful actions." Id. at 506 (emphasis added). The court concluded that because the convictions and the excessive force claim were not inconsistent, Heck did not bar the plaintiff's claims. Id.

Likewise, Heck does not bar Plaintiff's claim. Similar to the plaintiff in Lora-Pena, who was convicted of resisting arrest and assaulting federal officers, Plaintiff was convicted of resisting arrest and aggravated assault in violation of N.J. Stat. Ann. §§ 2C:29-2(a)(3)(a) and 2C:12-1(b)(5). Just as the judge who presided over the plaintiff's criminal trial in Lora-Pena did not put the question of excessive force before the jury, here, the judge in Plaintiff's criminal trial did not instruct the jury on the unlawful use of excessive force.[3] Thus, just as the defendants in Lora-Pena could have reacted to the plaintiff's illegal conduct with excessive force, it is possible that Defendants reacted to Plaintiff's illegal conduct with excessive force. Because Plaintiff's

---

[3] Instead, the judge provided the jury with the following instructions: (1) the elements of resisting arrest are "purposely prevent[ing] or attempt[ing] to prevent a law enforcement officer from affecting [sic] an arrest" and "us[ing] or threaten[ing] to use physical force or violence against the law enforcement officer or another[,]" (Pl.'s Ex. D Trial Tr. 106:22-25; 107:1, Apr. 4, 2007); (2) the elements of aggravated assault are "purposely attempting to cause or purposely, knowingly or recklessly caus[ing] bodily injury to [an] officer[,]" when "the . . . officer [is] a law enforcement officer[,]" and when "[the] Defendant knew the named officer was a law enforcement officer acting in the performance of his duties, while in uniform or exhibiting evidence of his authority" (Pl.'s Ex. D Trial Tr. 114:3-11, Apr. 4, 2007). Furthermore, although New Jersey plaintiffs may assert self-defense as a defense to aggravated assault if they do not use "greater force than that employed by the officer[,]" Smith v. Mitchell, No. 97-6115, 2000 U.S. Dist. LEXIS 20778, at *8 (D.N.J. Nov. 21, 2000), the state trial judge did not instruct the jury on the issue of self-defense.

7

conviction in state court is not inconsistent with a finding that Defendants used excessive force to arrest him, Heck does not bar Plaintiff's § 1983 claim.

### B. Qualified Immunity

Qualified immunity protects officers from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To determine whether qualified immunity applies, "[f]irst, the [C]ourt must consider whether the facts alleged, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right." Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004).  Second, "if a violation could be made out on a favorable view of the parties' submissions, the [Court must] ask whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001)).  A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.  The Court should not grant summary judgment on the basis of qualified immunity when disputed issues of historic fact are "material to the objective reasonableness of an officer's conduct[.]" Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002).  Material issues of disputed, historical fact "give rise to a jury issue." Id.

### 1. Violation of a Constitutional Right

The Fourth Amendment prohibits police officers from using excessive force to arrest a suspect. Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999).  To prove a Fourth Amendment excessive force claim, a plaintiff must show that (1) a seizure occurred and (2) the seizure was unreasonable. Id.  Here, there is no dispute that Defendants seized Plaintiff.  In determining whether the seizure was reasonable, the Court must apply the "perspective of a reasonable

8

officer on the scene[.]" Graham, 490 U.S. at 396.  As the Third Circuit explained in Couden v. Duffy, 446 F.3d 483 (3d Cir. 2006), the district court must:

> determine the objective reasonableness of the challenged conduct, considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, . . . whether he is actively resisting arrest or attempting to evade arrest by flight[,] . . . the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

Id. at 496-97 (citations omitted) (internal quotation marks omitted).  Serious physical injury is not a necessary prerequisite to an excessive force claim.  Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).  Beating a suspect after the suspect is subdued may constitute excessive force.  Barker v. Keezer, No. 08-1487, 2010 U.S. Dist. LEXIS 68995, at *8-9 (D.N.J. July 8, 2010) ("Barker claims that . . . Detective Keezer beat him about the head and body and repeatedly slammed his head into the pavement after he had already been handcuffed . . . and was lying on the ground. . . .  Therefore, a fact-finder, accepting Barker's version of the events as true, could conclude that Detective Keezer used excessive force in effectuating Barker's arrest and violated Barker's Fourth Amendment rights."); Hurt v. City of Atlantic City, No. 08-3053, 2010 U.S. Dist. LEXIS 16383, at *25-27 (D.N.J. Feb. 24, 2010) ("[I]t is for the jury to determine whether Officer Timek and Officer Warner physically assaulted Plaintiff after he was handcuffed and subdued on the ground.  Because resolution of these issues implicates 'disputes over facts that might affect the outcome of the suit under the governing law,' summary judgment is not appropriate . . . ." (citations omitted)).

Viewing the facts alleged in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendants used excessive force in violation of the Fourth Amendment by continuing to beat Plaintiff after he was subdued. The Complaint alleges that Officer Rodriguez hit Plaintiff on the head with a baton, Officers Gonzalez and Riordan punched him, and Officer LaTorre assaulted him even after they handcuffed and subdued him, (Compl. ¶ 6).[4] To support those allegations, Plaintiff points to the testimony of Ms. Evelyn Miller. (Pl.'s Br. at 16). During Plaintiff's criminal trial, Plaintiff's neighbor, Ms. Miller, testified that she observed officers beating Plaintiff outside of the garage, while he was on the ground with his hands behind his back. (Pl.'s Ex. B Trial Tr. 82-84, Apr. 4, 2007).[5] Specifically, Miller testified: "I saw [Plaintiff] laying face down on the ground with his arms behind his back. He was laying face down and there was two policeman, one on either side of him, one on his right and one on his left and they were beating him." (Pl.'s Br. Ex. B Trial Tr. 82:16-20, Apr. 4, 2007). Miller also testified that the officer to Plaintiff's left side used a "billy club" to beat Plaintiff on the head, and that the officer Plaintiff's right side "was beating him, . . . with his fists." (Pl.'s Br. Ex. B Trial Tr. 82:23-83:2, Apr. 4, 2007). Therefore, if the jury accepts Plaintiff's version of the events, and believes Miller's testimony, it may find that Defendants used excessive force when they arrested Plaintiff.

---

[4] In evaluating qualified immunity on a motion for summary judgment, courts usually take allegations in the light most favorable to the plaintiff by "adopting . . . the plaintiff's version of the facts." Scott v. Harris, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). However, because Heck precludes a verdict to the extent that it contradicts the elements of Plaintiff's crimes, Nelson, 109 F.3d at 146, the Court should "not draw inferences in Plaintiff's favor that would necessarily negate [his criminal convictions,]" Ference v. Twp. of Hamilton, 538 F. Supp. 2d 785, 789 (D.N.J. 2008). The state jury found that Plaintiff resisted arrest and committed aggravated assault against Officers LaTorre, Gonzalez, and Riordan. (Pl.'s Ex. D [Trial Tr. 141-44, Apr. 4, 2007]). Therefore, although Plaintiff asserts that he remained passive and complied with Defendants' orders throughout his entire arrest (Compl. ¶ 6), the Court analyzes Defendants' conduct as if it occurred after Plaintiff's criminal conduct.

[5] The witness's testimony was admitted "solely for the purpose of [allowing the jury to] assess[] the credibility of the police officers who testified." (Pl.'s Ex. D [Trial Tr. 100:9-12, Apr. 4, 2007]).

Defendants argue that a jury cannot accept Plaintiff's version of the facts because the record contradicts Plaintiff's story. (Defs.' Br. 5). Defendants assert that the record contradicts Plaintiff's story because Plaintiff suffered only a three-centimeter laceration on his head and "multiple abrasions and contusions on the right ribs." (Defs.' Br. 5; see Pl.'s Opp'n Br. Ex. A Trial Tr. 159:12-17, 161:1-162:6). However, Plaintiff's injuries are not so inconsistent with Plaintiff's story that they necessitate a finding for Defendants. It is possible that a plaintiff who receives multiple strikes to the head and body will sustain a laceration on his head and abrasions and contusions on his body. Therefore, there is a material issue of fact as to whether Defendants violated Plaintiff's Fourth Amendment rights by beating him after they subdued him.

### 2. Clearly Established Right

Having determined that a reasonable jury could conclude that Defendants violated Plaintiff's constitutional rights, the Court must determined whether those rights were clearly established at the time Defendants engaged in the allegedly unconstitutional conduct. The inquiry into whether a constitutional right is clearly established "must be undertaken in light of the specific context of the case[.]" Saucier, 533 U.S. at 201. A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. The Court must assess whether the right was clearly established at the time the officers acted. Anderson v. Creighton, 483 U.S. 635, 639 (1987).

Defendants arrested Plaintiff in 2006. (Defs.' Br. 1). In 2006, it was well-established that beating a subdued arrestee was a constitutional violation. See Barker, 2010 U.S. Dist. LEXIS 68995, at *10 (finding that defendants violated a clearly established right during plaintiff's 2006 arrest by beating plaintiff's head and body and smashing plaintiff's head into the

11

pavement while he was restrained); <u>Hurt</u>, 2010 U.S. Dist. LEXIS 16383, at *28 (finding that defendants violated a clearly established right during plaintiff's 2006 arrest by punching and kicking plaintiff for six to seven minutes while he was handcuffed).  Here, the record supports Plaintiff claim that Defendants hit him on the head with a baton, punched him, and otherwise assaulted him after he was handcuffed and subdued.  (<u>See</u> Pl.'s Br. Ex. B Trial Tr. 82:16-20; 82:23-83:2).  In 2006, Defendants would have known that such actions were unlawful.  Therefore, it is inappropriate for the Court to grant Defendants summary judgment at this juncture.

### IV.    CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is **DENIED**. An appropriate Order shall enter.


Date:  6/27/2011                                             /s/ Robert B. Kugler
                                                             ROBERT B. KUGLER
                                                             United States District Judge